[S. F. No. 21582.   In Bank.   Nov. 9, 1966.]

PACIFIC EMPLOYERS INSURANCE COMPANY, Plaintiff and Appellant, v. MARYLAND CASUALTY COMPANY et al., Defendants and Respondents; AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Defendant and Appellant.

320

Mento, Buchler & Littlefield, George K. Littlefield and Theodore H. Morrison for Plaintiff and Appellant.

Hersh & Hadfield, James D. Hadfield, Joseph F. Rankin and Richard G. Logan for Defendant and Appellant.

Johnson, Davies & Greve, Claire H. Greve, Sedgwick, Detert, Moran & Arnold, John S. Howell and George E. Sayre for Defendants and Respondents.

PEEK, J. — Both plaintiff Pacific Employers Insurance Company and defendant American Mutual Liability Insurance Company appeal from a judgment in a declaratory relief action which was brought by plaintiff to determine the respective rights and obligations of the appellants and two other defendant insurance companies respecting a claim for personal

injuries arising out of an accident in which insureds of each of the carriers were involved.

The case was submitted upon an agreed statement of facts and the trial court made its findings and conclusions of law from which the following uncontroverted matters appear: In November 1959 a trucker, a named insured of Pacific Employers Insurance Company (Pacific), sent two drivers with a truck and trailer to the plant of the defendant Libby, McNeill and Libby, Inc. (Libby), which is the named insured of Maryland Casualty Company (Maryland) and Underwriters at Lloyd's, London (Lloyd's). Two employees of Libby, using forklifts, proceeded to move case goods stacked on pallets onto the trailer. The forklifts were leased by Libby from a supplier insured by the American Mutual Liability Insurance Company (American).

During the operations severe personal injuries were sustained by one of the truck drivers. He thereafter commenced suit against Libby and one of its employees, alleging that the latter negligently operated one of the forklifts and thereby caused the injuries. It appears that the action for personal injuries was thereafter compromised for $100,000, with apportionment and contribution among the carriers to await the outcome of the instant action in declaratory relief.

Libby's insurance coverage consisted of a $25,000 policy from Maryland and two policies from Lloyd's covering losses in the ranges of $25,000 to $100,000 and $100,000 to $1,000,000. The excess obligations of Lloyd's are concededly dependent on the status of Maryland's obligation and need not be separately considered except in connection with Lloyd's contribution, if any.

The trial court found that the policies of Pacific and American were each primary insurance to the extent of the limits of the policies, i.e., $100,000 in each case, and ordered those companies to contribute to the loss on an equal basis. The court further found that Maryland's, and hence Lloyd's insurance were excess, and that those carriers were required to contribute only after the total insurance of Pacific and American was exhausted.

American contends that the provisions of its policy do not impose an obligation on it to defend Libby or its employee against the claim for personal injuries, or to make payment of that claim, and that Maryland's coverage of Libby is not excess.

Pacific, in addition to resisting American's attempt to escape liability, seeks a determination that its coverage is excess over American's and Maryland's coverages, or, in the alternative, that the loss should be prorated between all three carriers.

Attention is first directed to the liability of American as insurer of the owner-lessor of the forklifts. The terms of its policy protect the "insured" against liability for personal injuries sustained by any person. The "insured" includes the owner of the forklifts, its officers, directors and shareholders in some circumstances, and certain management personnel. There is no provision for additional insureds, lessees or operators of leased equipment, or permissive users of the insured's equipment. It thus appears that the American policy did not expressly cover liability of Libby or its employee.

Pacific argues, however, that because a forklift is an "automobile," then the American policy, as a matter of law, must provide liability coverage for permissive drivers, citing *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]. In that case a clause in a policy, which purported to limit coverage to the insured and the immediate members of his family while driving the insured's automobile, was struck down as inconsistent with sections 402 and 415 of the Vehicle Code.[1] The American policy in the instant case also provides for a limitation in the form of an "exclusion" which states that "This policy does not apply . . . except with respect to operations performed by independent contractors . . . to the ownership, maintenance, operation, use, loading or unloading of . . . automobiles if the accident occurs away from such premises or the ways immediately adjoining. . . ." Pacific contends that the foregoing limitation of liability, as in the

[1]Section 402 of the Vehicle Code then provided that "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages." The provisions of former section 402 have been expanded and are now found in sections 17150 to 17157, inclusive.

Section 415 of the Vehicle Code then provided in part that "Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured." The provisions of former section 415 have been expanded and are now found in sections 16450 to 16455, inclusive.

*Wildman* case, is invalid and that liability extends to Libby as a permissive user of the forklift as an automobile.

The exclusionary clause thus provides that it is ineffective in connection with operations on the insured's own premises and "ways immediately adjoining," or with respect to independent contractors. "Independent contractors" are not defined in the policy and the omission creates some ambiguity which, Pacific urges, requires that we accord to it a liberal construction in favor of the insured. (See *Jarrett* v. *Allstate Ins. Co.*, 209 Cal.App.2d 804 [26 Cal.Rptr. 231].) ██ In the broad sense a lessee of equipment may be an independent contractor as to the lessor. ██ However, the "courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." (*Jarrett* v. *Allstate Ins. Co.*, *supra*, 209 Cal.App.2d 804, 810.) ██ Here, the exclusionary clause purports only to *except* from exclusion certain coverages which, presumably, are elsewhere provided for in the policy, and the clause should not be relied upon to *impose* an obligation not otherwise imposed. There is nothing in the policy which, either expressly or impliedly, purports to furnish coverage for liability arising out of the negligent use of leased equipment by a lessee for its own purposes, even if he be deemed an independent contractor, except, perhaps, where a statute imposes vicarious liability as in the case of the permissive use of an automobile. (See *Wildman* v. *Government Employees' Ins. Co.*, *supra*, 48 Cal.2d 31.) Thus liability for the operations of independent contractors under this line of reasoning would depend on whether the forklifts were "automobiles." The validity of the exclusion which would limit coverage to the insured's premises and immediate ways also depends on whether the forklifts here leased are automobiles, as will be seen.

Pacific further claims that the territorial limit on coverage in the exclusionary clause is also invalid. Section 16451 of the Vehicle Code provides in part that an owner's policy shall "[i]nsure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle *within the continental limits of the United States. . . .*" (Italics added.) In *McFarland* v. *New Zealand Ins. Co.*, 176 Cal.App.2d 422 [1 Cal.Rptr. 482], relied upon by American, the limitation in a

policy which purported to cover the operation of a motor vehicle only on a military base was upheld. However, it was held there at page 425 that the "California Legislature is not in a position to determine the conditions under which vehicles may be operated within the confines of a United States military reservation." As the activity there involved was not subjected to regulation by the Legislature in the particular area, there was no conflict with legislative policy. Pacific concedes that if in the instant case American's policy purported to provide coverage only on its insured's private premises, there would be no conflict in principal with *McFarland,* but here the "ways immediately adjoining" phrase contemplates coverage on public roads and highways immediately adjoining the private premises. Such a limitation would thus appear to conflict with the provisions of section 16451, and the rationale of the *Wildman* case would require the effective incorporation of the dominant statutory provisions into the policy.

As indicated, American's liability under the foregoing reasoning depends on a determination that the forklifts here involved are "automobiles," within the meaning of the policy. ▉▉▉ American concedes that its policy covers injuries resulting from the use of automobiles where liability arises out of operations performed by an independent contractor, or on the premises or ways immediately adjoining. The policy provides under "Definitions" that "the word 'automobile' means a land motor vehicle, trailer or semitrailer. . . ." The provision at the least ambiguously poses the question whether the forklifts are "automobiles," and in view of the established policy that ambiguous terms in a policy should be liberally construed in favor of an insured (*Jarrett* v. *Allstate Ins. Co., supra,* 209 Cal.App.2d 804), we cannot now conclude that the trial court erred in expressly finding that the forklifts were automobiles within the meaning of the policy. (See *Pacific Indem. Co.* v. *Liberty Mutual Ins. Co.,* 239 Cal.App.2d 346, 354 [48 Cal.Rptr. 667].)

American urges that despite the foregoing, its policy is not an "automobile" or "motor vehicle" policy but rather a general comprehensive liability policy, and that the doctrine of incorporation of applicable statutory provisions into "automobile" policies, as in *Wildman,* is not compelled in this case. American concedes that there are three instances of liability arising out of the use of automobiles which *are* covered by the policy: (1) with respect to liability assumed by the insured

under a contract, (2) with respect to operations performed by an independent contractor and (3) with respect to the use of an automobile on the premises ''or the ways immediately adjoining.'' We have previously discussed related significances of the latter two coverages. Such limited coverages, American argues, should not, as a practical matter, convert what is not an ''automobile'' policy into such a policy.

American relies on authorities from other jurisdictions in support of its position. Closest in point is *Stevenson* v. *Merchants Mutual Ins. Co.*, 37 Misc.2d 996 [235 N.Y.S.2d 589], wherein the court stated at page 592: ''The . . . policy covers 'comprehensive personal liability.' It excludes liability arising from the ownership or operation of 'automobiles while away from the premises . . . or the ways immediately adjoining.' '' The court held in that case that no coverage was provided under the policy for liability incurred by the insured arising out of the operation of a go-cart on the public highway. However, in reaching that result the court relied heavily on its determination that in any event the go-cart was not covered under the policy, and that determination was reached without regard to whether the policy was or was not an ''automobile'' policy. Continuing at page 592 the court stated: ''The policy defines an automobile . . . which is designed for use principally off public roads if such equipment is not subject to motor vehicle registration. . . . [T]he . . . policy, for our purposes, excludes from its coverage all vehicles subject to motor vehicle registration. . . . The go-cart is a motor vehicle . . . subject to motor vehicle registration if operated on the public highway. . . . The . . . complaints allege the happening of the accident on the public highway. The complaint, therefore, does not sound within the coverage of the policy. Summary judgment . . . must be granted to the defendant'' carrier.

It thus appears that coverage was excluded in the foregoing case not so much because of the type of policy involved, but because the policy, by its own terms did not cover the negligently operated vehicle. ▮ In the instant case there is no question but that the forklift is expressly covered, at least as to some operations including its use on ''ways immediately adjoining'' the insured's premises. In construing the policy in light of this phrase we do not deem it relevant that the policy be categorized as an ''automobile'' or any other type policy. The label is unimportant. ▮ What is important is whether the policy, whatever its label, provides liability cover-

age to automobiles while operated on a public highway. If so, then the carrier has exposed itself to the application of the *Wildman* principle by purporting to furnish the crucial coverage.

The fact that in the instant case liability is limited to operation on the "ways immediately adjoining" the premises does not, we think, constitute such a negligible intrusion onto the public ways that it can be ignored under some *de minimus* doctrine, as urged by American. The policy does not attempt to define or apprise the insured as to what particular ways are immediately adjoining, either in general terms or as applicable to the insured's particular premises. Whether the immediately adjoining ways are those within 10, 100, 1,000 feet or more is left to speculation. In any event coverage is expressly provided for a use of the public ways which could be deemed as substantial within a fair interpretation of the policy. The fact that, under another interpretation, the policy's coverage might be deemed much narrower only raises an ambiguity which must be resolved in favor of the insured. Where a policy thus provides for coverage of liability arising out of a substantial use of the public ways by an insured's automobile, the *Wildman* doctrine is properly applicable.

There is little question but that both the Maryland and Pacific policies, as well as the American, furnished coverage of liability for the injury occurring. Pacific's policy, issued to the trucker, expressly covers the loading and unloading of the trailer in question. Its definition of "insured" includes "any person [in this case, Libby's negligent employee] while using [defined to include loading] an owned automobile [the trailer being loaded] and any organization [Libby] legally responsible for the use [loading] thereof, provided the actual use . . . is with his [the named insured's] permission."

Maryland's policy, of course, furnishes direct coverage to Libby as a named insured for any liability "arising out of the ownership, maintenance or use of any automobile," and also for any liability for personal injuries other than arising from the ownership, maintenance or use of automobiles. The definition of "insured" under the automobile coverage provisions, includes "any person [Libby's negligent employee] while using . . . a hired automobile [the forklift] . . . with his [Libby's] permission."

Although it is apparent from the foregoing that Libby is

entitled to coverage under American's, Pacific's and Maryland's policies, there remains the further questions: which insurance is primary; which, if any, is excess; and in what manner should insurance of the same character be prorated. To resolve these questions we must consider those provisions of the policies which purport to cover the status of the particular insurance in connection with other coverages.

The Pacific policy provides that its liability shall be shared with other coverage in proportion to the total coverage applicable, with the proviso that its coverage shall be excess with respect to a loss "arising out of the use of any non-owned or hired automobile." Pacific claims that the proviso requires a determination that its coverage is excess as to both American and Maryland, because the loss here arose out of the use of the forklift, a "non-owned or hired automobile." However, that loss also arose out of the use of the insured's truck and trailer in conjunction with the use of the forklift. Although it appears that the injured trucker was pulled to the ground and injured when the forklift became entangled with a rope with which he was working, he was at that time standing on the bed of the trailer roping down the case goods as they were moved onto the trailer by the forklift. Pacific should not be able to escape merely because, in addition to the insured's owned automobile, a nonowned automobile was also involved. (*Colby v. Liberty Mutual Ins. Co.,* 220 Cal.App.2d 38, 46 [33 Cal. Rptr. 538].)

Pacific seems to recognize the futility of its argument when it urges that, because at the precise moment of injury the forklift was moving *away* from the trailer to pick up other pallets, there was no direct causal connection between "the actual loading of the pallets on the truck" and the accident. The argument would seem to be that the truck and trailer were used in the loading operations only intermittently during the overall loading process, that is, only when pallets were being actually placed on the trailer. Accordingly, the argument proceeds, the forklift and the truck and trailer were being used in "loading" operations exclusively at the time of the accident, and Pacific's liability for insurance is thus excess. It seems clear, however, that the loading operation was one continuous process, and the narrow construction of the term "loading," as urged, is not permissible to limit the insured's coverage. Such conclusion is particularly compelled in the instant case where "loading" included the securing of

the case goods on the trailer, in which activity the trucker was engaged at the precise moment he was injured. (See *Entz* v. *Fidelity & Cas. Co. of New York,* 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382] ; *Colby* v. *Liberty Mutual Ins. Co., supra,* 220 Cal.App.2d 38.) It necessarily follows that Pacific's policy cannot be deemed excess as to other coverages.

■ American's policy provides under ''Other Insurance'' that ''If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.'' We note that the predicate of proration under the American policy is a situation wherein the insured ''has other insurance'' against the loss. Although it now appears that the policies of Pacific and Maryland are available to cover the particular loss here involved, it may be argued that these are not policies which the insured had. Nevertheless, it would follow that if other liability for insurance of the same status is to be prorated, as in the case of Pacific's, American's liability would also be prorated regardless of the ambiguity in its provisions therefor. In any event, American's policy cannot be deemed to be excess as to the other coverages.

Maryland's policy provides under its ''Other Insurance'' clause that it ''shall be excess insurance over other valid and collectible insurance available to the insured against any loss covered hereunder.'' Clearly, Maryland's policy at least purports to be excess, in the instant circumstances.

■ It is the general rule that courts will give heed to the excess insurance provisions contained in policies, even in situations where to do so will be inconsistent with proration provisions in the other policies. (*American Automobile Ins. Co.* v. *Republic Indemnity Co.,* 52 Cal.2d 507, 512 [341 P.2d 675].) This would lead to the result that Pacific and American would share liability to the extent of the limits of their policies, and Maryland and Lloyd's would participate thereafter. Both Pacific and American urge the inequity of that result. They contend that their insureds are innocently involved, in that they merely furnished a truck and trailer in one case and a forklift in the other; that the equipment was all placed on the premises of Maryland's insured (Libby) ; that Libby's employees operated the equipment and controlled the

loading operations, and that the injury came about through the negligent conduct of one of Libby's employees.

A situation not unlike the present one, at least in principle, was involved in *American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal.2d 507. There the insurer of a negligent driver was held entitled to take advantage of its excess coverage provision as against the insurer of the innocent owner under a policy which provided for proration. Here, although the situation is more complex, we have innocent owners of two vehicles covered by policies providing for proration, against a negligent operator covered by a policy providing only excess insurance. More in point, *Miller* v. *Western Pioneer Ins. Co.,* 237 Cal.App.2d 138 [46 Cal.Rptr. 579], involved an action by a truck driver against an unloading subcontractor and his employees. The trucker's insurance covered the subcontractor and his employees as permissive users unloading the truck, much like Pacific's policy in the instant case. Both the trucker's and the subcontractor's policies provided for prorated coverage and for excess insurance where other automobiles or nonowned automobiles were involved. Applying the rule of the *American Automobile Ins. Co.* case, the court concluded that only the trucker's insurance was primary. (See also *Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]; *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.,* 221 Cal.App.2d 150, 153 [34 Cal.Rptr. 406]; *Industrial Indem. Co.* v. *General Ins. Co,* 210 Cal.App.2d 352 [26 Cal.Rptr. 568].) ▮▮ Where, as here, the policies expressly provide for what shall be primary and excess coverages, those provisions should be given effect.

For the foregoing reasons, the judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

The petition of defendant and appellant for a rehearing was denied December 7, 1966.