[Civ. No. 33233.   Second Dist., Div. One.   May 15, 1969.]

BRUNSWIG WHOLESALE DRUGGIST, Plaintiff and Respondent, v. TRAVELERS INSURANCE COMPANY, Defendant and Appellant.

Schell & Delamer and John M. Maller for Defendant and Appellant.

Belcher, Henzie & Biegenzahn and David Bernard for Plaintiff and Respondent.

LILLIE, J.—The case having been tried on an agreed statement of facts, plaintiff was given a declaratory judgment decreeing that defendant insurance company (referred to herein as "Travelers") was liable to plaintiff (referred to herein as "Brunswig") as an additional insured under a Travelers policy covering a rubbish truck owned by the employer of one Horn for the undisputed costs of settlement of a prior personal injury action filed by Horn against plaintiff. ██ The basic issue below, as well as here, was whether Horn's accident arose out of the "use" of the truck, which term expressly "includes the loading and unloading thereof."

The parties stipulated to the following facts. Horn was the authorized operator of the insured vehicle which was used to pick up boxes and other waste from various concerns, including Brunswig; he had been thus engaged for about one year, stopping at Brunswig's premises five days of each week. On the date of the accident, Horn had parked his truck at the entrance to Brunswig's waste well, about 20 feet from the point where his injuries were subsequently sustained; thus, at the moment of the accident he was in the waste well and engaged in the process of moving boxes and other trash to the entrance of the well from which point he would thereafter stack the boxes and trash on his truck. While Horn was so engaged, one Daniels, acting in the course of his employment for Brunswig, was on the floor above the waste well attempting to empty a metal cart or dolly full of trash into the opening of the chute to the waste well. Though Daniels would normally dump the trash from his cart onto the floor and then push it through the opening with a broom, on this occasion he attempted to dump the cart's contents directly into the chute; in doing so, Daniels lost control of the cart which fell from the

second floor down the chute to the bottom of the waste well on the first floor, striking Horn on the back.

The injuries thus sustained were proximately caused by the negligence of Daniels, and Horn thereafter filed suit against Brunswig and other parties. The Travelers policy, covering the truck, was in full force and effect on the date of the accident. In pertinent part it provided that Travelers agreed to pay on behalf of Horn's employer (John's Rubbish Company) "all sums which said insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." The term "Insured" is therein defined to include anyone using the truck with the permission of the named insured, while "Use" is defined to include "the loading and unloading" of the vehicle. Finally, Travelers agreed by its policy to defend any suit against the "insured" which alleged bodily injury arising out of the use of the automobile.

Brunswig having been served with process in the Horn action, the defense of such action was tendered to Travelers with a demand that it defend and indemnify Brunswig pursuant to the provisions of the policy issued to John's Rubbish Company. Travelers denied coverage and refused either to defend or indemnify. There then followed the settlement of the Horn action upon completion of discovery; the sum paid was stipulated to be a reasonable sum.

In determinating the scope of "loading and unloading" clauses in an automobile liability insurance policy, courts have been guided by one of two basic theories—the "coming to rest" and the "complete operations" doctrines. California has adopted the "complete operations" rule (*Entz* v. *Fidelity & Cas. Co.*, 64 Cal.2d 379, 384 [50 Cal.Rptr. 190, 412 P.2d 382]), the broader of the two; accordingly, the court stated in the cited case that "The effect of a 'loading and unloading' provision is simply to expand the term 'use of the vehicle' so that coverage will extend from the commencement of loading until the completion of unloading." (P. 387.) As very recently pointed out, the adoption in California of the more liberal of the above rules "is an indication that a liberal, although of course, reasonable interpretation ought to be made in favor of the insured as to what constitutes the commencement of a loading operation." (*P. E. O'Hair & Co.* v. *Allstate Ins. Co.*, 267 Cal.App.2d 195, 197-198 [72 Cal.Rptr.

690].) Further pointed out in *O'Hair* is that with respect to a "loading and unloading" clause the rule is one of "extensions," namely, that the insertion of such a clause in an insurance policy leads to the conclusion that it was inserted for the purpose of extending the coverage of the policy to accidents not covered by the other provisions of the standard motor vehicle liability policy.

Recognizing the above legal principles, it is nonetheless contended by Travelers that there must be a reasonable limitation placed on the "extensions" thus afforded by the subject clause, citing a case decided in its favor. (*San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.*, 229 Cal.App.2d 229, 237 [40 Cal.Rptr. 165].) But, as is so often true, "no general rule can be laid down as to when an accident arises out of the [loading or] 'unloading' of a vehicle, but each case must be separately considered according to the particular facts involved." (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630, 636-637 [235 P.2d 645].) However, from the many and different factual situations presented to California courts for determination, the following specific guidelines have emerged. Use does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the subject vehicle. (*Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange*, 190 Cal.App.2d 194, 202 [11 Cal.Rptr. 762].) The fact that an instrumentality independent of the insured vehicle caused the injuries does not preclude coverage. (*Industrial Indem. Co.* v. *General Ins. Co.*, 210 Cal.App.2d 352, 357-358 [26 Cal.Rptr. 568].) Nor is coverage precluded by the fact that the loading process is intermittent or interrupted (*Pacific Employers Ins. Co.* v. *Maryland Cas. Co.*, 65 Cal.2d 318, 327 [54 Cal.Rptr. 385, 419 P.2d 641]) and hence the time sequence is of no significance. (*General Acc. etc. Corp.* v. *Hanley Oil Co.*, 321 Mass. 72 [72 N.E.2d 1, 171 A.L.R. 497], approvingly cited in *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, *supra* 106 Cal.App.2d 630, 637.)

None of the above guidelines or tests, according to Travelers, is here applicable. In the *General Accident* case the accident occurred during the unloading of a truck by means of a hose, part of the truck's equipment and connected to the fill pipe of a storage tank; oil pumped into the tank through the hose overflowed, ignited about three hours after the truck had left and burned a house. In that case, says Travelers, as

well as other California decisions mentioned in its brief, the independent instrumentality was part of the equipment used for the unloading (or loading) process; here, however, Horn was not injured by anything used in loading the truck, the instrumentality being a "second floor" dolly which accidentally fell to the first floor; and the negligent act of Daniels was an independent act, and quoting *Truck Ins. Exchange* v. *Webb*, 256 Cal.App.2d 140, 145-146 [63 Cal.Rptr. 791], "or intervening cause wholly disassociated from, independent of and remote from the use of the [truck]."[1] We do not agree. The circumstances at bar require an inquiry as to whether the employee's negligent act in permitting the cart to fall upon Horn was a "step . . . necessary to accomplish the purpose for which the [truck] was being used" (*American Auto Ins. Co.* v. *American Fid. & Cas. Co., supra,* at p. 638) or part of one 'continuous process." (*Pacific Employers Ins. Co.* v. *Maryland Cas. Co., supra,* 65 Cal.2d 318, 327.) Avoiding the narrow construction of the term "loading" (as was done in *Pacific Employers*), for the following reasons we are satisfied that such inquiry must be answered in the affirmative. The duties of the employee (Daniels) included dumping trash down the chute into a waste well; Horn, on his part, was required to load the trash from the waste well into the truck. Both were thus engaged in their respective duties while the truck was at the well for the purpose of loading trash from the well. Daniels had initiated the process by dumping trash into the well from the second floor opening and the next "step" would have been accomplished by Horn in loading the trash from the well into the truck. During that "continuous process" there occurred the negligent act which proximately caused injury to Horn. It is no answer to say, as was unavailingly urged in the *American Auto Insurance* case, that Daniels was negligent; "The question is whether [dumping of waste into the well] was part of the operation of [loading the truck]." (106 Cal.App.2d 630, 637-638.)

The only other point, a minor one, is that Travelers requested a specific finding (Code Civ. Proc., § 634) as to the identity of the person who was "using" the truck at the time of the accident; the court made no response thereto. As stated

---

[1]The cited case, it should be noted, involved no "loading and unloading" clause, the court specifically stating that it became unnecessary to decide whether a different result would have been required had such a clause "extending the scope of the term 'use' " been part of the policy.

in *Mashon* v. *Haddock*, 190 Cal.App.2d 151, 167 [11 Cal.Rptr. 865], the above code section (amended in 1959) does not change the basic rules as to findings which are set forth in such case. Comparing the findings with the evidence, they are sufficient to support the judgment at bar without the additional finding hereinabove requested; too, it is not even hinted that the court's failure to comply with the instant request constituted reversible error.

The judgment is affirmed.

Fourt, Acting P. J., and Thompson, J., concurred.