## PENNSYLVANIA THRESHERMEN AND FARMERS' MUTUAL CASUALTY INSURANCE COMPANY *v.* SHIRER

[No. 192, September Term, 1960.]

*Decided March 20, 1961.*

532

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*George D. Solter*, with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for the appellant.

*Stephen R. Pagenhardt*, with whom was *Walter W. Dawson* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal is by an insurance company from a judgment against it in a suit by an insured, a contractor, seeking reimbursement under an automobile policy for damages he had paid when his crane, mounted on a truck, ran out of control and struck a house and an automobile. The case was tried before the court sitting without a jury on a stipulation of facts, which included a statement given after the accident by the operator of the crane.

The appellant insurance company insured the automobiles of the contractor under an automobile liability policy. Soon after its issuance, the policy was amended by endorsement so as to include in its coverage a Michigan crane or "power shovel," a twenty-ton piece of equipment, consisting of a motor truck on which is mounted a crane, with an interchangeable "backhoe," both crane and backhoe being actuated by a power plant separate from the regular truck engine which propels the truck chassis. The operator of the rig sits in a revolving cab on the rear of the chassis and from there either drives the truck or operates the crane or the backhoe. Both engines cannot be operated at the same time, we were told at the argument.

By another endorsement, added at the time the crane was covered, the definition in the policy of "Automobile" was amplified to exclude and include as follows:

"The 'Definition of Automobile' is amended as follows:

"1. The following described equipment shall be deemed an automobile while towed by or carried on an automobile not so described, but not otherwise: if of the crawler-type, any tractor, power crane or shovel, ditch or trench digger; any farm-type tractor; any concrete mixer other than of the mix-in-transit type; any grader, scraper, roller or farm implement; and, if not subject to motor vehicle registration, any other equipment not specified in (2) below, which is designed for use principally off public roads.

"2. The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation *or while being operated solely for locomotion, but not otherwise;* if of the non-crawler type, any power crane or shovel, ditch or trench digger; and any air-compressing, building or vacuum cleaning, spraying or welding equipment or well drilling machinery." (Emphasis supplied.)

While the policy as amended was in force, the crane, having dug the foundation for a dwelling near Oakland, was finishing the digging of a sewer trench from the house to the main sewer line when the driver "went to move about four feet up the bank to make another dig when the gear suddenly disengaged and the shovel came back down the hill before I could get the air brakes on."

The bucket on the front of the crane hit and damaged a building and an automobile. The owner of the building and the owner of the car each sued the contractor and recovered a judgment which has been paid. The insurance company disclaimed liability and the contractor brought the present suit against it.

The defense of the company was below, and is here, that the crane was not being "operated solely for locomotion but not otherwise" when the mishap occurred. It would appear from a discussion in *Liberty Mutual Insurance Co. v. Dooley Electric Company,* 133 N. Y. S. 2d 785, 789 (which held as

to a 1951 comprehensive general liability policy that a "crane mobile" which was not subject to motor vehicle registration under New York law at the time of the accident and was not clearly excluded or included among the exceptions in the policy, was not an automobile excluded by the policy), that "The Mutual Insurance Rating Bureau, operating under Article VIII of the Insurance Law filed a revision of the general liability manuals with the Superintendent of Insurance. The revision was effective December 15, 1952, and by it there was included in the definition of automobile a power crane when its operation off premises of the insured is solely for locomotion. That clarification was regarded as necessary because of the development in recent years of relatively high-speed equipment of this sort as presenting a new and additional hazard not existing when equipment was invariably slow moving and almost always of the crawler type."

The insurance company's argument is, essentially, that the policy covered the crane only when it was travelling from its owner's place of business to a job site or from job site to job site. Since it can find no case to support this contention, it refers to and relies on certain bulletins of the National Underwriter Company, a large insurance publishing house, which discuss the endorsement in question. A typical reference is:

> "In general, the intent is that liability from equipment of the *first type* [crawler-type tractors, graders, farm implements, etc.] is to be covered by *General Liability insurance,* even while these machines are driven on roads to or from jobs under their own power. No Automobile Liability premium is required on them and there is no coverage under Comprehensive Automobile Liability insurance. * * *
>
> "Apparatus of the *second* type is often driven *under its own power* from job to job. If so, it takes an Automobile Liability premium. * * * Note that under the language of the policy * * * there is no coverage under the Automobile policy for the actual operation of these pieces of equipment—only for the

transportation hazard. The *operation hazard* is covered by General Liability insurance."

The record indicates that the contractor had in force a contractor's general public liability policy and suggests that liability under that policy was denied. The situation is like that commented on in 7 Appleman, *Insurance Law and Practice,* Sec. 4324 (b), p. 96:

"Instances have arisen where the insured carries general public liability insurance and specific automobile liability coverage, and a close factual situation is presented in which each insurer is perfectly willing to permit the other insurer to pay the loss, leaving the insured in the middle."

We think the policy language means that the crane is covered when it is operating as a vehicle in motion, when it moves from place to place and that the distance it moves is not necessarily controlling. It is undisputed that the crane and the backhoe are powered in their operation by a power plant which has nothing to do with the locomotion of the truck chassis and that the rig does not move when the crane or the backhoe are in operation. If Appellant's argument is taken literally, operation of the rig would almost never be solely for locomotion because movement to a new job site would be for the ultimate purpose of placing the digging part of the rig at the point where it was to dig. That was exactly what occurred in the present case. The truck was being driven four feet to a point where the backhoe could dig by use of its separate engine.

Our view is that the crane was being operated solely for locomotion and not otherwise when it went out of control. It was the driving gear on the mechanism which provided locomotion for the truck which slipped out, not any part of the crane or backhoe mechanisms, which were not then in use.

In *Citizens Casualty Co. of New York v. L. C. Jones Trucking Co.,* 238 F. 2d 369, 372 (C. C. A. 10), the policy involved limited coverage to automobiles "used only for transportation

of merchandise purposes." A truck of the insured, equipped with a gin pole and winch, was engaged by the seller of an oil well drilling rig and equipment to convey it to where the well was to be drilled. Part of the equipment was a "kelly head" forty feet long and weighing some two tons. The truckers deposited the kelly head and the drill pipe about two hundred feet from the drilling site. The drilling company hired the trucker to move the kelly head and other drilling equipment to the drilling site and put them in position. The winch line was attached to the kelly head and it was raised several feet from the ground by means of the gin pole and winch. The driver then drove the truck forward toward the drilling site and the kelly head fell and injured an employee of the drilling company. Rejecting arguments similar to those of the appellant insurer in the case before us, the Court said:

> "Transportation is the taking up of persons or property at some point and putting them down at another.
>
> "If there is a forward movement, distance is not important.
>
> "Here, the Jones truck picked up the kelly head and started a forward movement, for the purpose of moving it to and setting it down in place at the drilling site, and the accident happened during such forward movement. We think, under the facts and attending circumstances, Jones was engaged in transportation of merchandise at the time of the accident. The accident clearly arose out of the operation of the Jones truck."

We think the reasoning of the case was sound and that it is applicable here.

Maryland has not adopted the rule of many jurisdictions that an insurance policy is to be construed most strongly against the insurer. We follow the rule that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole, *Dyer v. Royal Insurance Company,* 220 Md. 105, 107, and that is what we have done in the present

case. However, if the insurance company, in attempting to limit coverage to locomotion on the road, or from job site to job site, failed to make its intended meaning clear and drew an ambiguous clause, that ambiguity would be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally, *Ebert v. Millers Fire Insurance Co.,* 220 Md. 602, 611, and cases cited; *Employers' Liability Assurance Corporation, Ltd. v. Reed's Refrigeration Service, Inc.,* 222 Md. 49, 54.

On either theory the decision of the trial court that the crane was covered by appellant's policy was correct.

*Judgment affirmed, with costs.*

BRUNE, C. J., filed the following concurring opinion.

I concur in the judgment on the second ground of the Court's opinion—that the contract of insurance is ambiguous and is therefore to be construed against the party whose language it is.