**VOLKER STEVIN CONSTRUCTION, INC., Plaintiff,**

v.

**SEABOARD SURETY COMPANY, Defendant.**

**No. 86–2641–CIV.**

United States District Court, S.D. Florida.

Nov. 30, 1987.

**1564**

Dennis M. Campbell, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiff.

Robert D. McIntosh, Ft. Lauderdale, Fla., for defendant.

## AMENDED ORDER OF FINAL SUMMARY JUDGMENT

MARCUS, District Judge.

"[E]ven as a rose is a rose is a rose, so a truck has been held a truck though the damage was caused by its use in conjunction with a power winch."[1]

This case requires the interpretation of an insurance contract, created by the parties to provide coverage of Plaintiff Volker Stevin Construction, Inc.'s ("Volker Stevin") construction equipment. The policy provides coverage by Seaboard Surety Company ("Seaboard") for certain scheduled construction equipment, as well as other leased or newly acquired equipment. On July 21, 1986, Volker Stevin leased from Hertz Rental Equipment Corp. a 1986 Ford F–700 Bucket Truck (the "bucket truck"). Two days later it was damaged while on a public highway enroute to obtain gasoline for the compressor that was mounted on it. The repair costs were $39,-638.72. The question before the Court is whether these costs are covered by the insurance contract. Volker Stevin has moved for summary judgment. Seaboard has cross-moved for summary judgment. We hold that summary judgment in favor of Volker Stevin is appropriate.

The insurance policy at issue is an "all risks" policy; that is, the "agreement protects against ALL RISKS of direct physical loss or damage to contractor's equipment you [Plaintiff] own or have in your [Plaintiff's] care that has been leased or rented from others." However, the policy specifically excludes from coverage "automobiles

or similar vehicles." The nature and extent of this exclusion clause forms the basis of this action. Plaintiff claims that the bucket truck is not similar to an automobile, while Defendant, relying specifically on the use of the truck when it was damaged, claims that it is similar to an automobile.

Plaintiff's argument is threefold. First it maintains that since the Defendant accepted premiums for the coverage of similar scheduled equipment, it is estopped from claiming that the bucket truck is excluded from coverage. Second, the Plaintiff contends that other courts that have considered this issue have found that these trucks are not automobiles or similar to automobiles. Finally, Plaintiff contends that the ambiguous language embodied in this policy must be construed against the insurer. On the other hand, Defendant relies on the contention that the damaged equipment because of its use is, as a matter of law, similar to an automobile.

"It is well settled that the construction of an insurance policy is a question of law for the court." *Jones v. Utica Mutual Insurance Co.*, 463 So.2d 1153, 1157 (Fla.1985) (citation omitted). Further, "it is within the province of the trial judge—not the jury—to resolve ... ambiguit[ies] as a matter of law." *Ellenwood v. Southern United Life Insurance Co.*, 373 So.2d 392, 394 (Fla. 1st DCA 1979) (citations omitted). "A contract is ambiguous when its language is reasonably susceptible to more than one interpretation, or is subject to conflicting inferences." *Specialty Restaurants Corp. v. City of Miami*, 501 So.2d 101, 103 (Fla. 3rd DCA 1987) (citations omitted). In this contract, the critical language is contained in the exclusion clause. The insurance policy does not apply to automobiles or similar vehicles. An automobile is, obviously, a combination of a variety of qualities. Whether something is similar to an automobile can be subject to different interpretations depending on the context of the examination. Accordingly, the term "auto-

---

**1.** 7A Appleman, *Insurance Law and Practice,* § 4500.03 at 205 (Berdal ed. 1979).

mobiles or similar vehicles" is susceptible to more than one interpretation.

■ In construing the meaning of an ambiguous term, we must look to the terms and conditions of the entire contract, and not simply the isolated sentence in question. *Ellenwood*, 373 So.2d at 395. Sometimes, other provisions within the contract can shed light on the intent of the parties regarding the coverage that the policy provides, and in particular what type of vehicles are insured. There is no doubt that the policy covered "direct physical loss or damage to the contractor's equipment." The policy specifically referred to certain pieces of equipment that were scheduled in the insurance contract itself. Among the approximately 50 items of scheduled equipment are two Ford F–800 Trucks with Crane ("crane truck"). The affidavit of Eddy Weldink, controller of Volker Stevin, identifies the crane trucks as "similar to the bucket trucks." A picture of the crane truck [Affidavit of Eddy Weldink, Exhibit D] does, in our view, indicate a striking similarity to the bucket truck [*Id.*, Exhibit E]. Defendant offers no evidence that these two vehicles are not similar, other than to note that the bucket truck was being used differently at the time the damage occurred. [Seaboard's Memorandum of Law in Opposition to Volker Stevin's Motion for Summary Judgment and Seaboard's Cross-Motion for Summary Judgment at 8].

In considering a motion for summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, we do not conclude that the bucket truck is in fact similar to the crane truck. We merely note in passing that any similarity between the two vehicles is instructive in construing the intent of the parties regarding the insurance coverage.

■ Plaintiff contends that the coverage of the crane truck estops the Defendant from asserting that the bucket truck is excluded from coverage.

The traditional elements for an estoppel claim, which are designed to balance the equities of a case, are (1) a promise or misrepresentation of fact, (2) reasonable reliance on the misrepresentation or promise, and (3) the reasonableness of such reliance. *Organized Fishermen of Florida v. Hodel*, 775 F.2d 1544, 1549 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986). While there exists an inference that Plaintiff's conduct in renting and using the bucket truck was based, in part, on the Defendant's "promise" to insure a similar vehicle, we are unprepared to find that the reliance, if any, was reasonable. The doctrine of estoppel "is applied with great caution and if the conduct is ambiguous ... there is no estoppel." *Capital Bank v. Schuler*, 421 So.2d 633, 638 (Fla. 3rd DCA 1982) (citations omitted). The fact that the crane truck is insured under this policy is not, by itself, determinative of the underlying issue in this matter.

■ However, it is clear by now that the interpretation of the ambiguous exclusion clause "must be construed against the party who drew the contract or chose the language used." *Ellenwood*, 373 So.2d at 395. The Eleventh Circuit has recently noted that "all exclusions will be 'strictly construed against the insurer and in favor of coverage.'" *Quesada v. Director, Federal Emergency Management Agency*, 753 F.2d 1011, 1013 & n. 4 (11th Cir.1985) (*quoting Smith v. Horace Mann Insurance Co.*, 713 F.2d 674, 676 (11th Cir.1983)). *See also, DaCosta v. General Guaranty Insurance Co. of Florida*, 226 So.2d 104, 105 (Fla.1969). The essence of the ambiguity, here, is whether the bucket truck exists within the universe of vehicles that are similar to an automobile. Applying this rule of construction we conclude that it does not.

We recognize that a definition of the contract term "automobiles or similar vehicles," can be derived from any number of sources outside of the contract. Defendant

suggests that 7A Appleman, *Insurance Law and Practice*, § 4500.03 at 200–01 (Berdal ed. 1979) is instructive. Even this discussion underscores the difficult distinction between the terms "automobile" and "equipment." There; "automobile is defined as 'a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto) but does not include mobile 'equipment.'" Moreover, after stating this general premise, the treatise examines how courts have defined various types of vehicles based on contract provisions, not a fixed standard.

The Defendant cites a number of cases which purportedly illustrate that the subject bucket truck can be categorized as a vehicle similar to an automobile because of its inherent qualities. *Pacific Employers Insurance Co. v. American Mutual Liability Insurance Co.*, 65 Cal.2d 318, 54 Cal.Rptr. 385, 419 P.2d 641 (1966) (forklift deemed an automobile where policy provides specific definition of "automobile"); *McConville, Inc. v. Merchants Mutual Insurance Co.*, 47 Misc.2d 279, 262 N.Y.S.2d 521 (1965) (bottom earth dumper deemed an automobile where parties to insurance contract have agreed to use the Motor Vehicle Statute as a guide to determining coverage); *Nelson v. Ohio Casualty Insurance Co.*, 29 Wisc.2d 315, 139 N.W.2d 33 (1966) ("the word 'automobile' is a generic term which embraces trucks." Court stressed the broad remedial purpose underlying the state's Workmen's Compensation Act under which the case was brought). These cases serve only to demonstrate that a variety of vehicles can be classified as an automobile depending on the specific contract provisions.

Defendant further suggests that because the accident occurred on a public road, while the vehicle was on an "errand" indicates that it is similar to an automobile. *See, e.g., Citizens Casualty Co. of New York v. L.C. Jones Trucking Co.*, 238 F.2d 369 (10th Cir.1956) (truck found to be an automobile, where "automobile" specifically defined in the contract), *cert. denied*, 352 U.S. 1003, 77 S.Ct. 563, 1 L.Ed.2d 548 (1957); *Pennsylvania Threshermen &*

*Farmers' Mutual Casualty Insurance Co. v. Shirer*, 224 Md. 530, 168 A.2d 525 (1961) (power shovel deemed an automobile, where term explicitly defined in contract as, *inter alia*, equipment used for transportation or being operated solely for locomotion). While this argument does present some logical force, Defendant cannot point to a provision in the contract that designates use as the determinative criteria for coverage.

Likewise, Plaintiff has cited two cases which purportedly demonstrate that a bucket truck is not similar to an automobile. *Donahue Construction Co. v. Transport Indemnity Co.*, 7 Cal.App.3d 291, 86 Cal.Rptr. 632 (1st Dist.Ct.App.1970) (mobile truck crane not an "automobile" when insurance policy specifically looked to its use at the time of the accident in order to define that term); *Parent v. United States Fidelity & Guaranty Co.*, 233 A.2d 435 (Me.1967) ("Moto Crane" not an automobile where term specifically defined in the insurance policy). Again, these cases merely reiterate the proposition that courts, when determining the extent of insurance coverage by the intent of the parties to the contract, cannot simply divine whether a particular piece of equipment is inherently similar to an automobile.

We also note that the Florida legislature has defined "motor vehicle" as "any vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, but not including any bicycle or moped...." *See* Fla.Stat.Ann. § 316.003(21). *See also M.J.S. v. Florida*, 453 So.2d 870, 870–71 (Fla. 2d DCA 1984). "Vehicle" is defined as: "[e]very device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks." Fla. Stat.Ann. § 316.003(76). *See also* Fla.Stat. Ann. §§ 320.01, 322.01, 520.02(7). However, "the legislature does not consider vehicles for construction use to be 'motor vehicles'...." *M.J.S.* 453 So.2d at 871.

The examination of state law does not advance the resolution of the ambiguous

contract provision. First, we are left with the inherent dispute as to whether the bucket truck was in fact a motor vehicle or a vehicle for construction use. Further, we have no indication that the parties agreed to be bound by state law on this subject. The policy does provide that "[a]ny part of this policy that conflicts with state law is automatically changed to conform to the law." However, whatever meaning is assigned to the term "automobile or similar vehicle" will not conflict with state law, it will simply reflect what this Court has interpreted the provision to mean.

The cases cited by Defendant, none controlled by Florida law, which purportedly establish that the bucket truck is similar to an automobile are not persuasive. Such a determination can be made only within the specific factual contours of a given case. The term "automobile" cannot be confined to a singular definition. The intent of the parties in creating the insurance contract must control this interpretation. Therefore, we decline to accept as controlling a fixed definition of the term, or the interpretation of courts outside of this jurisdiction, which were bound by different factual considerations. Accordingly, we find that the subject bucket truck is not an "automobile or similar vehicle." Of primary importance in this determination is the rule of construction which requires ambiguous language to be construed against the drafter, as well as our sense of the intent of the parties as manifest by the coverage of the crane truck.

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit recently explained:

In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [Environmental Defense Fund v.] *Marsh,* 651 F.2d [983] at 991 [5 Cir.1981]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir. 1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics, [v. Wackenhut Protective Systems, Inc.],* 669 F.2d [1026] at 1031 [5 Cir. 1982]; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See*

*Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has recently provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.*

In another recent case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (emphasis added).

As noted, *supra,* the construction of an insurance policy is a question of law. *Jones,* 463 So.2d at 1157. And "it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court." *Id.* Given our construction of the contract term "automobiles or similar vehicles" as not including the subject bucket truck, there exists no further facts for the jury to find in order for Defendant's liability to be established. The parties agree that the bucket truck was rented by the Plaintiff, and as to the extent of the damage and the cost of repair. The policy is an all risk policy, and Defendant has not made an alternative argument that even if the truck itself is covered, the type of damage is not. Here, there can be only one conclusion as to the verdict were the question of liability presented to a jury. Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant's Cross-Motion for Summary Judgment is DENIED.